**BETHLEHEM PLAZA**

v.

**Harold S. CAMPBELL et al.**

**Civ. A. No. 75–655.**

United States District Court,
E. D. Pennsylvania.

Nov. 17, 1975.

tions, defendants Beth Westgate, Inc. and Rosehill, Inc., allegedly controlled and operated by defendant Harold S. Campbell, and Campbell himself in his individual capacity allegedly violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, in attempting to thwart the successful operation of plaintiff's shopping mall which competes with defendants' shopping center known as the Westgate Mall located two miles away. Plaintiff has, in addition, alleged pendent claims under state law for abusing and/or misusing legal process and for illegally agreeing to restrain trade.

By order dated September 2, 1975, we denied defendants' motion to dismiss for lack of subject-matter jurisdiction [1] and for failure to state a claim upon which relief could be granted, Rules 12(b)(1) and (6), F.R.Civ.P. However, defendants subsequently moved for reconsideration of our Rule 12(b)(6) ruling which we granted and which is presently before us. After oral argument and careful consideration of the ably prepared briefs, we conclude that defendants' motion to dismiss must be granted.

■■ For the purpose of a ruling on a motion to dismiss under 12(b)(6), the complaint must be construed in the light most favorable to plaintiff and all well-pleaded factual averments taken as true. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Curtis v. Everette,* 489 F.2d 516 (3d Cir.), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). Since this is antitrust litigation involving motive and intent and most of the proof may be in the possession of the alleged conspirators, we are cautioned against hasty adjudications which might forestall the full opportunity to litigate potentially meritorious antitrust claims. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Fortner-Enterprises v. U. S. Steel Corp.,*

Martin M. Baylson, Philadelphia, Pa., for plaintiff.

David Berger, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

In this antitrust action defendants are charged with agreeing and conspiring to restrain trade in and monopolize the market defined as that unique cluster of services offered by shopping centers in the Bethlehem area. Plaintiff Bethlehem Plaza, a partnership, has recently completed constructing a shopping mall in the center of Bethlehem as a private venture in that city's overall redevelopment effort designed to revitalize the central business district. Two corpora-

---

1. Our determination was based on *Doctors, Inc. v. Blue Cross of Greater Philadelphia,* 490 F.2d 48 (3d Cir. 1973), and *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct.

2004, 44 L.Ed.2d 572 (1975). Defendants have not seriously questioned this determination in their motion for reconsideration.

394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969); *Austin v. House of Vision*, 385 F.2d 171 (7th Cir. 1967). With these considerations in mind, we turn to the complaint.

Briefly summarized, plaintiff alleges in Count I that defendants and others unknown entered into a conspiracy, unlawful under 15 U.S.C. § 1, to restrain commerce by impeding the successful operation of and competition from the Bethlehem Plaza shopping mall. Present redevelopment plans for downtown Bethlehem include a public parking garage to be constructed directly across the street from Bethlehem Plaza. The commercial success of the shopping mall depends, in part, on the availability of ample parking which would be provided by the proposed garage. The Bethlehem Parking Authority has already acquired the land, received bids for a construction contract, and arranged to issue municipal bonds to finance the garage.

Pursuant to the unlawful conspiracy, it is alleged defendants

"commenced a plethora of activities * * * including spurious litigation, disparagement, misleading advertisements and other organizational activities purportedly designed to prevent expenditure of public funds, but in reality motivated by defendants' intention to restrain trade and prevent competition."

(Complaint, ¶ 18).

Among these activities, plaintiff specifically alleges the following:

(a) In early October, 1974, a summons in equity against the Bethlehem Parking Authority was filed in the Court of Common Pleas of Northampton County by the "Committee for Constructive Renewal". Defendant Campbell offered to pay the costs of litigation to this group, but the action was discontinued on October 29, 1974;

(b) On October 30, 1975, defendant Campbell placed in two newspapers an advertisement, financed by defendant Beth Westgate, which made "scurrilous, false and unfounded accusations impliedly against partners of plaintiff";

(c) Campbell filed suit in November, 1974, against the parking authority alleging that the proposed bond issue constituted an improper use of public funds but he was actually motivated by the illegal conspiracy and a desire to prevent competition by impeding the construction of parking facilities essential to the successful operation of the mall; and

(d) Campbell offered to settle the action on the conditions that (1) the enclosed walking bridge from the parking garage to the mall be eliminated, and (2) that the City not build another parking facility in the downtown area for another three years.

In Count II, plaintiff alleges an unlawful attempt to monopolize the unique cluster of services offered by shopping centers as the relevant product in the geographical market defined as the Lehigh Valley Region comprised of Lehigh and Northampton Counties in Pennsylvania and Warren County in New Jersey and in the sub-market comprised of an area within a five-mile radius of the center of Bethlehem. The same factual allegations supporting Count I are alleged to violate Section 2 of the Sherman Act, 15 U.S.C. § 2.

Counts III and IV are pendent claims under state law—abuse/misuse of legal process and an unlawful agreement to restrain trade—supported by the previous factual allegations.

Plaintiff's prayer for relief includes treble damages under § 4 of the Clayton Act and an injunction restraining defendants from further acts in pursuance of the unlawful conspiracy.

*Summary of Legal Arguments*

Defendants' attack on the sufficiency of the complaint is rooted in the doctrine announced in *Eastern Rail, Pres. Conf. v. Noerr Motor Frgt.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and reaffirmed in *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

They argue that the Sherman Act was not intended to sanction the legitimate prosecution of a lawsuit by a taxpayer challenging public expenditures regardless of the taxpayer's motivation or of any resulting impediment to competition. In addition, it is asserted that defendants' sponsorship of newspaper advertisements falls within the realm of 'protected political activity even though the alleged "scurrilous and disparaging" character of the advertisement may have had an adverse impact on plaintiff. Without other concrete material factual allegations, they argue, the complaint fails to state a claim under the Sherman Act.

Plaintiff has countered with the assertion that the "baseless" lawsuit and the disparaging advertising fall within the "sham exception" to *Noerr* as typified in *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Given the anti-competitive and monopolistic intent, there is no shield from the Sherman Act liability by virtue of the fact that the methods used *per se* are lawful.

*Discussion*

■ In order to assess the merits of these contentions, we start with the language of the Sherman Act. Section 1 states:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

Section 2 provides:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States * * * shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court". 15 U.S.C. § 2.

The complaint adequately alleges the operative legal elements of these sections. However, the sweeping statutory language is not without some limitation. The Supreme Court in *Eastern Rail Pres. Conf. v. Noerr Motor Freight, supra,* recognized a necessary limitation in order to resolve the conflict between the legislative intent to foster competition and the fundamental precepts embodied in the First Amendment which protect legitimate attempts to influence the operation of the executive and legislative process.

In *Noerr* the Court faced antitrust allegations which were dissimilar to the traditional combinations normally held violative of the Sherman Act—combinations in which the participants agreed to abandon their trade freedom or agreements to destroy the trade freedom of others by boycotts, divisions of markets and price fixing. The *Noerr* plaintiffs had alleged a pervasive and vicious publicity campaign designed and motivated solely to destroy the competing trucking business by influencing legislative and executive governmental treatment favorable to the railroads. In holding that such a campaign was not actionable under the Sherman Act even though the railroads were attempting to and were partially successful in destroying their competition through governmental action, the Court stated:

"In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives. To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act. Secondly, and of at least equal signif-

icance, such a construction of the Sherman Act would raise important constitutional questions. The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms." Id. 365 U.S. at 137–138, 81 S.Ct. at 529 (footnotes omitted)

The Court rejected the contention that the vicious nature of and the anticompetitive motivation behind the deceptive campaign rendered the conduct actionable, finding that the ethical considerations did not transform the otherwise protected conduct:

"Insofar as the Act sets up a code of ethics at all, it is a code that condemns trade restraints, not political activity, and, as we have already pointed out, a publicity campaign to influence governmental action falls clearly into the category of political activity." Id. at 140–141, 81 S.Ct. at 531.

Moreover, Noerr was reaffirmed in United Mine Workers v. Pennington, supra, where the Court stated:

"* * * Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act." Id. 381 U.S. at 670, 85 S.Ct. at 1593.

Later, in California Motor Transport Co. v. Trucking Limited, supra, after referring to both Noerr and Pennington, the Court extended the Noerr doctrine to the adjudicating process:

"The same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of the Government." Id. 404 U.S. at 510, 92 S.Ct. at 612.

Nevertheless, in that case the Court concluded that actionable conduct under the Sherman Act had been stated where the allegations, if proved, would show an abusive pattern of repetitive and baseless litigation in both federal and state courts which effectively barred plaintiffs from meaningful and necessary access to these tribunals and usurped the decision-making process. That conduct, motivated solely by an anticompetitive intent, was sufficient to fall within the so-called "sham exception" for it constituted a conspiracy to interfere directly with the business relationships of a competitor under the guise of legitimate activity carried to such an extreme as to suggest an abuse of otherwise legal recourse to the adjudicatory process.

A similar result was reached in Otter Tail Power Co. v. United States, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973) where the Court remanded a case which had been dismissed under Noerr. There defendants, in attempting to preserve a monopoly in energy sources, commenced baseless and repetitive lawsuits to prevent local municipalities from successfully financing the development of alternative power sources which would compete with defendant. On remand, the District Court concluded that the defendant's frequent meritless litigation, motivated solely to retain its monopoly as a power source, was a sham superficially camouflaged as a legitimate resort to the adjudicatory process, and held defendant liable under the Sherman Act. 360 F.Supp. 451 (D.Minn.), aff'd, 417 U.S. 901, 94 S.Ct. 2594, 41 L.Ed.2d 207 (1974).

■ Here, we are not faced with a pattern of litigation, but with one lawsuit instituted and prosecuted by defendant Campbell in the exercise of his right as a taxpayer to challenge the proposed bond issue on the ground that solely private interests are being served to the deteriment of the public. See 53 P.S. § 6780–1 et seq.[2] Taking plain-

2. So far, Campbell has not been successful on the merits. A final decree dismissing all

exceptions was entered on March 24, 1975, by the Court of Common Pleas of Northampton

tiff's allegations as true, we must assume that his motivation is solely to restrain competition by delaying the construction of the parking garage and that any delay which results does, in fact, stifle competition from Bethlehem Plaza. Nevertheless, defendants' anticompetitive motivation, per se, does not, in our opinion, serve to convert his resort to the adjudicatory process into the status of an abuse of the same process, the "sham" which triggered the exception to *Noerr* in both *California* and *Otter Tail*. We cannot disregard the facts: (1) that this litigation is an exercise of his right as a taxpayer, created in and protected by the applicable statute as well as by the Constitution, and (2) that he may ultimately prevail. To hold that his personal financial stake in the litigation automatically converts his conduct into Sherman Act liability would seriously jeopardize his freedom to exercise his statutory and constitutional right with the spectre of antitrust liability hanging in the balance should he not be successful on the merits.

Moreover, the allegations of scurrilous advertising and disparagement of members of plaintiff's partnership do not themselves, or in combination with the lawsuit, serve to convert what may be otherwise actionable conduct into Sherman Act liability under the *Noerr* doctrine for these allegations suggest political activity rather than actionable business activities. *See also United Mine Workers, supra, Adolph Coors Co. v. A & S Wholesalers, Inc.,* 1975 Trade Cases ¶ 60187 (D.Colo.1975); *Metro Cable Co. v. CATV of Rockford, Inc.,* 375 F.Supp. 350 (N.D.Ill.1974). The pleadings are devoid of allegations that the advertisement, which appeared only one time in two newpapers, constituted actionable defamation or resulted in a direct interference with the business relationships of competitors.

 Finally, in a general, conclusory and unspecific fashion, the complaint alleges other organizational activities committed in furtherance of the conspiracy. We cannot assume the truth of this allegation for there are no supporting facts which can be taken as true for the purpose of our ruling. We recognize, of course, the plaintiff's sincere hopes and expectations that the discovery process will yield concrete factual data to fill these voids and the principles of notice pleading in the Federal rules, but we cannot ignore important countervailing constitutional principles. To allow the complaint to stand on the basis of these expectations and otherwise privileged conduct under the Sherman Act would certainly deter antitrust violators, but would at the same time seriously endanger the exercise of protected statutory and constitutional rights, a result which has been countermanded in *Noerr*.

Accordingly, we grant the defendants' motion to dismiss.

County, and was affirmed by the Commonwealth Court on July 25, 1975. A petition for Allocatur was filed on August 25, 1975, with the Supreme Court of Pennsylvania and is now pending.