CITY OF NEWARK, Newark, Delaware,
City of Milford, Milford, Delaware,
Town of Smyrna, Smyrna, Delaware,
Plaintiffs,

v.

DELMARVA POWER & LIGHT
COMPANY, Defendant.

CITY OF NEW CASTLE, New Castle,
Delaware, Plaintiff,

v.

DELMARVA POWER & LIGHT
COMPANY, Defendant.

Civ. A. Nos. 77–254, 77–296.

United States District Court,
D. Delaware.

Aug. 25, 1980.

Thomas G. Hughes, O'Donnell & Hughes, Wilmington, Del.; Wallace L. Duncan, James D. Pembroke, Philip L. Chabot, Jr., and J. Kathy Lichtenberg, Duncan, Brown, Weinberg & Palmer, Washington, D. C.; William C. Brashares, and David H. Coffman, Caldouhos & Brashares, Washington, D. C., for plaintiffs in C.A. 77–254.

Charles S. Maddock, Edward W. Cooch, Jr., and Richard R. Cooch, Cooch & Taylor, Wilmington, Del., for plaintiffs in C.A. No. 77–296.

E. Dickinson Griffenberg, Jr., Potter, Anderson & Corroon, Wilmington, Del., Taylor R. Briggs, and Robert Cushman, LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendant.

## OPINION

STAPLETON, District Judge:

Currently before the Court for decision are plaintiffs' motions to dismiss two counterclaims asserted by Delmarva Power & Light Company ("Delmarva"), the defendant in these consolidated antitrust actions. Delmarva's first counterclaim purports to state claims under Sections 1 and 2 of the Sherman Act; the second relies on Delaware common law. Both allege the same course of conduct on the part of each of the plaintiffs, the Town of Newark and the Cities of Milford and Smyrna ("Cities") in one case and the City of New Castle ("New

Castle") in the other. Cities and New Castle purchase electric power at wholesale rates from Delmarva for resale through their distribution systems to retail accounts.

Delmarva alleges that plaintiffs enjoy monopolies in their respective territories and are able to charge "excessive" rates to their customers within those territories in order to subsidize other municipal services. Delmarva does not suggest that these allegations, by themselves, state a claim on behalf of Delmarva under either federal or state law. It further alleges, however, that plaintiffs, in order to preserve and extend their respective monopolies, have engaged in an "unlawful conspiracy" to prevent competition from Delmarva by maintaining its own unregulated rates while "achieving wholesale rates from Delmarva unlawfully discriminating under Section 205 of the Federal Power Act." The conduct which has been engaged in for this purpose is said to have taken three distinct forms. First, the plaintiffs have allegedly conspired with each other or with other parties to maintain their present right under Delaware law to set their electric power rates without regulation by the Delaware Public Service Commission. *See* 26 Del.C. § 202. Secondly, it is claimed that plaintiffs have intervened before the Federal Power Commission ("FPC") raising sham issues relating to Delmarva's tariff filings in order to cause delays and thereby coerce it into settlements which provided for wholesale rate tariffs unduly discriminatory in favor of plaintiffs. Finally, Delmarva contends that these antitrust suits were initiated by plaintiffs, without a bona fide belief in their merits, for the purpose of coercing and harassing Delmarva and as a warning to plaintiffs' customers that purchasing electric power from Delmarva may result in harassment through expensive litigation.

In support of their motions to dismiss for failure to state a claim, plaintiffs rely heavily on the doctrine initially fashioned by the Supreme Court of the United States in *Eastern R.R. President's Conference v. Noerr Motor Freight, Inc.* ("Noerr"), 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pen-nington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 ("Pennington") (1965). The *Noerr–Pennington* doctrine holds that activities designed to influence governmental action may be entitled to an exemption from the operation of the antitrust laws even when they are anti–competitive in purpose. Delmarva disputes the applicability of the *Noerr–Pennington* doctrine.

In *Noerr,* the Court held that a complaint alleging that certain railroads had initiated a deliberately false publicity campaign in order to promote the "adoption and retention of laws and law enforcement practices destructive of the trucking business . . . and to impair the relationships existing between the truckers and their customers," 365 U.S. at 129, 81 S.Ct. at 525, did not state a cause of action under the Sherman Act. Justice Black rejected any interpretation of the Act that would attribute to Congress an intent to regulate political activity designed to influence the passage or enforcement of legislation. 365 U.S. at 139–40, 81 S.Ct. at 530–531. Such a construction is without support in the legislative history of the Act, he declared, and "would raise important constitutional questions." 365 U.S. at 138, 81 S.Ct. at 530.

Additionally, the Court held that the application of the Sherman Act to political expression does not depend on the motives of those involved, 365 U.S. at 139, 81 S.Ct. at 530; thus, even the unethical and anti–competitive conduct at issue in *Noerr* was protected from antitrust liability. The Court did observe, however, that situations might arise in which anti–competitive activity ostensibly directed toward influencing government policy "is a mere sham to cover what is actually nothing more than attempt to interfere directly with the business relationships of a competitor", 365 U.S. at 144, 81 S.Ct. at 533, and the application of the Sherman Act would therefore be justified.

*Pennington* involved a claim brought by a small mining company against the United Mine Workers ("U.M.W."), larger companies, and the Secretary of Labor, alleging a conspiracy to drive the small operators

out of business through the adoption of various anti–competitive practices by the Union, and by joint lobbying of the Secretary of Labor to secure policies designed to destroy the small mine owners. While the agreement between the U.M.W. and the large operators to adopt anti–competitive labor practices was subject to antitrust liability, the Court stated that:

> Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act. 381 U.S. at 670, 85 S.Ct. at 1593.

The Court's reference to "public officials" extended the principles of *Noerr* to forms of political action other than efforts to pass or enforce legislation.

The Court applied the sham exception to the *Noerr–Pennington* doctrine in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). It was alleged in this case that a group of trucking companies had engaged in a joint campaign of administrative and judicial harassment to prevent a rival corporation from obtaining operating rights. The Court ruled that this behavior was not a genuine attempt to influence government policy, but rather a conspiracy to deny competitors meaningful access to the agencies and courts. 404 U.S. 515–16, 92 S.Ct. at 614. In reaching this conclusion, the Court noted a variety of other forms of unethical conduct that would corrupt, the adjudicatory process, and which would go unprotected from antitrust liability: perjury, misrepresentation, fraud, bribery, and so on. 404 U.S. at 512–13, 92 S.Ct. at 612–613.

■ Thus, while the *Noerr–Pennington* doctrine protects one's First Amendment right to petition the government and to associate for political purposes by immunizing conduct designed to influence governmental action, it does not shield anti–competitive conduct which abuses the governmental process either because it is pursued without a bona fide hope or intent of securing governmental relief or because it seriously undermines the ability of the process to accomplish its objective. *See, e. g., Israel v. Baxter Laboratories, Inc.*, 466 F.2d 272 (D.C.Cir.1972); *Semke v. Enid Automobile Dealers Association*, 456 F.2d 1361 (10th Cir. 1972); *Associated Radio Service Co. v. Page Airways, Inc.*, 414 F.Supp. 1088 (N.D. Tex.1976).

■ Before turning to the application of these principles to the allegations in this case it is important to take note of a related procedural doctrine also designed to safeguard the First Amendment interests served by *Noerr–Pennington*. This doctrine requires a litigant claiming "sham" behavior to state the basis for this allegation in more than conclusory terms; his complaint must provide some basis for believing that what appears to be an exercise of the right to petition is in reality something else. The courts so holding have expressed a concern that, without such a requirement, the exercise of the right to petition would be chilled by the fear of having to defend expensive litigation. Thus, the Ninth Circuit observed that:

> The Supreme Court has consistently recognized the sensitivity of First Amendment guarantees to the threat of harassing litigation, and has erected barriers to safeguard those guarantees (citations omitted). . . .
>
> \*　\*　\*　\*　\*　\*
>
> In holding that plaintiffs' allegations are insufficient in this case, we are not adopting a rule that so–called "fact" pleading, as distinguished from "notice" pleading, is required in antitrust cases. . . . What we do hold is that in any case, whether antitrust or something else, where a plaintiff seeks damages or injunctive relief, or both, for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board*, 542

F.2d 1076, 1082–83 (9th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). Similarly, Judge Newman has noted that,

> The right to litigate, like speech itself, needs some breathing room. The antitrust pleader who fails to allege circumstances indicating that the suit against him is clearly within the *Noerr* "sham exception," must expect his claim to fail at the outset.

*Mountain Grove Cemetery v. Norwalk Vault Co.*, 428 F.Supp. 951, 956 (D.Conn. 1977). This Court has also refused to accept unspecific, conclusory allegations of "sham" conduct. *See Outboard Marine Corp. v. Pezetel*, 474 F.Supp. 168 (D.Del. 1979).

■ Delmarva has failed to make any specific allegation which would provide a basis for inferring that the activities of plaintiffs have been anything other than bona fide attempts to secure various forms of governmental relief. Accordingly, Delmarva's counterclaims will be dismissed.

■ Delmarva's allegation that plaintiffs have conspired "for the purpose and with the effect of preventing the Delaware P.S.C. from exercising jurisdiction over" their tariffs clearly does not state a claim upon which relief can be granted whether that allegation is considered alone or in connection with the other allegations of the counterclaims. Because Delmarva does not provide the slightest indication that plaintiffs' "conspiracy" involved anything other than a genuine effort to influence governmental action, this segment of its first counterclaim must be dismissed.

■ Defendant's allegations with respect to plaintiffs' activities before the F.P.C. are no more successful in alleging the existence of actionable misconduct. Because plaintiffs purchase electric power at wholesale from Delmarva, they clearly have a legitimate interest in defendant's wholesale tariff proceedings before the Commission. They are not alleged to have impeded Delmarva's access to the Commission or indeed to have done anything other than partici-

pate on an adversary basis before the Commission in accordance with its rules. No basis has been suggested for any conclusion other than that plaintiffs were genuinely interested in obtaining action from the F.P.C. Plaintiffs sought relief before the Commission and, in fact, achieved partial relief in the form of settlements. These settlements were approved by the F.P.C. under a statute that requires it to reject all rates that are not "just and reasonable." *See* 16 U.S.C. § 824d(a).

In this context, Delmarva, in order to state an antitrust claim, must do something more than allege that plaintiffs raised unspecified "sham" issues before the F.P.C. to delay the proceedings and coerce it into unfair settlements. Even assuming that plaintiffs believed that their intervention would delay the proceedings and put pressure on Delmarva, this would no more establish "sham" conduct than did the circumstance in *Noerr* that a publicity campaign directed at the legislature had the incidental effect of damaging the business relationships of the truckers.

■ Finally, while perhaps a closer issue, Delmarva's claim with respect to plaintiffs' litigation activities is also insufficient. Here again, Delmarva has supplied an inadequate basis for believing that plaintiffs' antitrust action was not initiated for the purpose of securing judicial relief; its unsubstantiated evaluation of the action as a "sham" clearly does not provide such a basis. In addition to this unsupported characterization of plaintiffs' claim, however, Delmarva does allege that plaintiffs brought the existence of their suit to the attention of certain unspecified individuals. Delmarva concludes that this was done to harass and coerce it, and to threaten plaintiffs' customers with similar sham litigation if they were to purchase electric power from defendant.

If plaintiffs were alleged to have actually threatened their customers with sham litigation, this circumstance might provide a basis for inferring that their suit against Delmarva was instituted as a part of a program of intimidation, and not as a legiti-

mate exercise of their right to petition. See *Colorado Petroleum Marketers Association v. Southland Corp.*, 476 F.Supp. 373 (D.Colo.1979); *Associated Radio Service Co. v. Page Airways, Inc., supra.* This, however, is not alleged. Nor are plaintiffs even accused of bringing this lawsuit directly to the attention of their customers. In the absence of such allegations, plaintiffs should not have to litigate antitrust claims based upon their institution of this lawsuit.

Because, under the present allegations, none of the three kinds of activity in which plaintiffs are said to have engaged can serve as a basis for liability, Delmarva's first counterclaim will be dismissed. If Delmarva is able to assert a "sham" proceeding claim in conformity with this Opinion it may move to amend its answer.

Delmarva's second counterclaim, founded on the identical allegations as its first counterclaim, but asserting Delaware common law as a basis for liability, must also be dismissed. The *Noerr–Pennington* doctrine is founded on the right, guaranteed by the First Amendment, "peaceably to assemble, and to petition the Government for the redress of grievances." While this constitutional basis for the doctrine was not expressly articulated in the *Noerr* and *Pennington* cases, this is the fair reading of *California Motor Transport.* As the Court there observed:

> . . . it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests *vis–a–vis* their competitors.

404 U.S. at 510–11, 92 S.Ct. at 612. Similarly, in *Continental Ore Co. v. Union Carbide & Carbon Corp.*, the Court referred to the "constitutionally protected freedoms spoken of in *Noerr*." 370 U.S. 690, 708, 82 S.Ct. 1404, 1415, 8 L.Ed.2d 777 (1962). ▮ Given the constitutional basis of the *Noerr–Pennington* doctrine it is apparent

that activity which it shields from federal antitrust liability is also protected from claims based on state common law. To hold otherwise would be to permit state common law to supersede the right to petition created by the First Amendment and applied to the states by the Fourteenth Amendment.