**SAGE INTERNATIONAL, LTD.,**
Plaintiff,

v.

**CADILLAC GAGE COMPANY,** Defendant, and consolidated actions.

Civ. A. Nos. 78-70064, 79-74829, 80-70493 and 80-71074.

United States District Court,
E. D. Michigan, S. D.

Feb. 23, 1981.

Jefferson D. Kirby, III, Atlanta, Ga., Robert V. Seymour, Southfield, Mich., for plaintiff.

Robert G. Cutler, Detroit, Mich., Edward D. Plato, Farmington Hills, Mich., for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR FOR PARTIAL SUMMARY JUDGMENT

PATRICIA J. BOYLE, District Judge.

This litigation involves claims by the various plaintiffs that defendant interfered

with their plans to market an armored car and/or parts for an armored car. Specifically, the allegation presently before the Court on the defendant's motion to dismiss or for partial summary judgment is that defendant violated the Sherman Antitrust Act by subjecting the plaintiffs to sham litigation in state court.

Plaintiffs allege that defendant commenced litigation in Macomb County Circuit Court for the sole purpose of interfering with the plaintiffs' ability to compete in the armored car market. The Macomb County action involved allegations of numerous trade secret violations and, though at the outset it was brought against the Verne defendants, including Larson and Henke, it ultimately was expanded to include other defendants, among them Sage International, Hagan Industries, Standard Forge and Axle, and Old Dominion Manufacturing Company. All claims were ultimately dismissed on a directed verdict, and the trial judge expressed his belief that the action had been commenced to injure the defendants (plaintiffs here) economically and to deter them from entering the armored car market. Subsequently, the portion of the circuit judge's opinion drawing these conclusions was stricken on motion from the plaintiff (defendant here).

Plaintiffs allege that in the course of the Macomb County action Cadillac Gage procured and used perjured testimony given in the form of an affidavit from one John Towell. It is further alleged that efforts were made by Cadillac Gage to settle the state claims against Sage and Larson by offering to pay attorney fees plus Five Thousand Dollars ($5,000) to each in exchange for favorable testimony against Verne and Hagan in the state action. It is further alleged that defendant utilized expansive discovery procedures in the state court action to interfere with efforts by the state court defendants to be marketing their product and that the state court action was commenced despite the fact that private investigators hired by the antitrust

defendant had been able to discover no basis for the allegations of wrongdoing by the antitrust plaintiffs.

Certain of these allegations are not specifically embodied in the complaints. The complaints invoke the term "sham" and refer to alleged perjurious testimony in connection with the Macomb County action but do not particularize further the basis for the assertions. The other allegations of specific misconduct are based on discovery conducted in connection with the instant action and, presumably, with the state court action.[1]

Defendant moves to dismiss the antitrust allegations arising from the Macomb County action—the "sham litigation" allegations. Arguing that there must be a heightened standard of pleading for such allegations and that plaintiffs have not attained the standard, defendant contends that the sham litigation claims must be dismissed on the pleadings. Defendant further asserts that even if there is not a heightened pleading requirement the elements of an antitrust sham litigation claim have not been alleged and cannot be established. Thus, defendant seeks dismissal of the sham litigation claims.

Plaintiffs respond that there is no heightened pleading requirement—that the pleading standard is simply that of notice pleading set forth in Rule 8, Fed.R.Civ.P. Plaintiffs also respond that defendant misconstrues the requisites for a sham litigation cause of action and that the facts thus far established, viewed in the light most favorable to the plaintiffs, are sufficient to support the sham litigation claim at this stage in the proceedings.

Defendant does not dispute that in limited circumstances, there can be antitrust liability in connection with legal action taken by an alleged monopolist. However, it is asserted that the exception is a narrow one that does not encompass the conduct alleged here.

---

1. It should also be noted that pendent jurisdiction claims alleging abuse of process and malicious prosecution in connection with the Macomb County action are before this Court.

The Supreme Court developed rules governing this issue in a trilogy of cases commencing with *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). There the Court rejected the contention that antitrust liability could, in general, arise from lobbying efforts by the railroads in favor of stricter trucking regulations, despite the possibility that the tactics of the railroads were intended to and did injure the status of truckers in the marketplace. Underlying the holding are two conclusions. First, there is limited resemblance between the usual combination in restraint of trade normally held violative of the Sherman Act and an association attempting to persuade the executive or legislative branch of government to take particular action that might produce a restraint. Second, expanding Sherman Act coverage to limit such activity would implicate serious first amendment concerns in connection with the right to petition. *Id.* at 136–38, 81 S.Ct. at 528. In dictum, however, the Court did recognize a potential exception to the general immunity for acts of petition, stating, "There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." *Id.* at 144, 81 S.Ct. at 533.

Four years later, in *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the Court reinforced the *Noerr* holding and clarified the rule that anti-competitive intent underlying efforts to influence legislative or administrative action is not sufficient to create a Sherman Act cause of action. As stated by the Court: "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose." *Id.* at 670, 85 S.Ct. 1593.

In the third case, the Supreme Court, for the first time, utilized the exception to the general immunity recognized in *Noerr* and *Pennington*. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), involved allegations that the defendants conspired to use their power to restrain plaintiffs' trade activity and to deny the plaintiffs free and unlimited access to administrative and judicial tribunals. It was alleged that the defendants had instituted proceedings with or without probable cause with the ultimate effect of limiting competition. Noting, first, that access to the courts is encompassed in the first amendment right to petition, but later, noting that the first amendment is not a source of complete immunity from statutorily forbidden activity, *id.* at 510, 514, 92 S.Ct. at 611, 613, the Court concluded that the allegations were sufficient to bring them within the "sham" exception to the *Noerr-Pennington* doctrine. After commenting that misrepresentations, accepted in the political arena, are not immunized in the judicial arena, the Court observed:

> Opponents before agencies or courts often think poorly of the other's tactics, motions, or defenses and may readily call them baseless. One claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused. That may be a difficult line to discern and draw. But once it is drawn, the case is established that abuse of those processes produced an illegal result, *viz.*, effectively barring respondents from access to the agencies and courts. Insofar as the administrative or judicial processes are involved, actions of that kind cannot acquire immunity by seeking refuge under the umbrella of "political expression."

404 U.S. at 513, 92 S.Ct. at 613.

■ From these three cases can be formulated a general rule of antitrust immunity in connection with the exercise of the right to petition, whether the petition be to the legislative, administrative, or judicial branch of government. Yet the rule is limited by the sham exception which restricts

immunity where the act of petition is nothing more than an abusive attempt to interfere *directly* with the business relationship. Where the act of petitioning involves judicial action, the immunity may be somewhat circumscribed by reason of the fact that misrepresentation and unethical conduct in that arena is not tolerated as readily as in the political arena.[2]

■ Defendant's initial argument is that the court must apply a heightened standard of pleading in this case and that the plaintiffs' complaints are insufficient to meet that standard. This contention rests on the proposition that, because defendant's first amendment right of petition is implicated and would be chilled by the threat of generally pleaded antitrust claims based on litigation undertaken by the antitrust defendant, it is proper to impose a higher standard of pleading to guard against the chill.

The leading case supporting a rule of heightened pleading in the sham litigation context is *Franchise Realty Interstate Corporation v. San Francisco Local Joint Executive Board of Culinary Workers*, 542 F.2d 1076 (9th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). That litigation involved a claim by MacDonald's restaurants that the union was thwarting MacDonald's efforts to obtain building permits by prevailing on the Board of Permit Appeals to deny permits. The majority opinion noted that the activity was essentially political, *see* 542 F.2d at 1079, and involved sensitive first amendment issues, 542 F.2d at 1082. Thus, the court ruled that to state a claim under the sham litigation exception, "a complaint must include allegations of the specific activities, not protected by *Noerr,* which plaintiffs contend have barred their access to a governmental body." 542 F.2d at 1082.[3]

The *Franchise Realty* approach has been given a mixed reception. Although other courts have indicated that the first amendment concerns require careful pleading of facts sufficient to bring the claim within the sham exception, *e. g., Bethlehem Plaza v. Campbell*, 403 F.Supp. 966, 971 (E.D.Pa. 1975); *Mountain Grove Cemetery v. Norwalk Vault Co.*, 428 F.Supp. 951, 956 (D.Conn.1977), few courts have given extensive attention to the rationale. *But see City of Newark v. Delmarva Power & Light*, 497 F.Supp. 323, 1980–81 Trade Cases, ¶ 63,677 (D.Del.1980). In particular, the tension between a heightened pleading standard and the provisions of Rule 8 of the Federal Rules has been all but overlooked by those courts imposing a strict standard of fact pleading on sham litigation plaintiffs. *Cf. Bethlehem Plaza v. Campbell*, 403 F.Supp. at 971 (referring to problem of notice pleading, but without analysis).

Those courts which have given explicit consideration to Rule 8(a) have concluded that the general standards of notice pleading must govern rather than an *ad hoc* standard formulated to protect a constitutional interest. *E. g., MCI Communications Corp. v. American Telephone and Telegraph Co.*, 462 F.Supp. 1072, 1102 (N.D.Ill.1978); *cf. Outboard Marine Corp. v. Pezetel*, 474 F.Supp. 168, 171, 173 (D.Del.1979) (applying usual standard of review of motion to dismiss for failure to state a claim and noting that the court does not intimate it is applying the *Franchise Realty* standard). Also, other courts have reviewed motions to dismiss sham litigation claims without mention of a heightened standard of pleading, thus suggesting at least *sub silentio* rejection of such an approach. *Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 746–47, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976); *cf. Taylor Drug Stores v. Associated*

**2.** Another court recently stated the exception this way: "[The *Noerr-Pennington* doctrine] does not shield anti-competitive conduct which abuses the governmental process either because it is pursued without a *bona fide* hope or intent of securing governmental relief or because it seriously undermines the ability of the process to accomplish its objective." *City of Newark v. Delmarva Power & Light Co.*, 497

F.Supp. 323, 1980–81 Trade Cases (CCH) ¶ 63,677 at p. 77, 633 (D.Del.1980) (citations omitted).

**3.** The carefully reasoned dissent took exception to any departure from the usual standard of pleading under Fed.R.Civ.P. 8(a). 542 F.2d at 1086, 1089–90 (Browning, J., dissenting).

*Dry Goods*, 560 F.2d 211, 213 (6th Cir. 1977) (summary judgment upheld under usual rigorous standard). Moreover, the Ninth Circuit, itself, in a recent decision, applied the usual pleading standards in reviewing a sham litigation case and rejected any suggestion that the circuit's *Franchise Realty* decision should be "blindly follow[ed]." *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 841 (9th Cir. 1980).

I conclude, therefore, that the better approach is not to engraft a heightened pleading requirement onto sham litigation cases but rather to apply the usual pleading standards provided in the Federal Rules.[4]

Because defendant does not contend that the pleadings of plaintiffs are insufficient to satisfy the usual notice pleading standards, it is not necessary further to address the question of the particularity of the pleadings. Defendant does, however, raise another substantial argument in support of dismissal of the sham litigation claims. It is said that the pleadings do not allege and could not allege the essential elements of a sham litigation claim.

Defendant contends that there are two essential elements to a sham litigation claim: (1) denial of meaningful access to an adjudicatory tribunal and (2) a pattern of baseless litigation. Defendant asserts that plaintiffs have failed to allege and can show neither element since plaintiffs were given free access to the state court and since there was but one lawsuit.

The identified elements have their genesis in the *Trucking Unlimited* case, where Justice Douglas brought the petitioner's allegations within the *Noerr-Pennington* exception by focusing on the alleged denial of access to the adjudicatory forum and the pattern of baseless, repetitive claims. 404 U.S. at 513, 92 S.Ct. at 613. Defendant at bar seizes on the analysis in *Trucking Un-*

*limited* as an absolute delineation of the circumstances coming within the sham litigation exception. Plaintiffs, on the other hand, stress that the boundaries of the exception are not demarked solely by the factors considered in *Trucking Unlimited*.

Considering, first, the suggestion that a single trial is not sufficient to form a pattern of baseless, repetitive claims and therefore cannot sustain a sham litigation claim, it is not settled that a sham litigation claim must refer to more than one adjudication in order to withstand summary dismissal. Though courts have made frequent reference to "pattern of baseless, repetitive claims," that phrase arose in *Trucking Unlimited* because the particular plaintiff in that case made such allegations. *Trucking Unlimited* is not a holding that such allegations are the exclusive means of avoiding the *Noerr-Pennington* immunity doctrine. In fact, the Court in *Trucking Unlimited* observed: "There are many other forms of illegal and reprehensible practice which may corrupt the administrative or judicial processes and which may result in antitrust violations." 404 U.S. at 513, 92 S.Ct. at 613. Yet, there is no question that some indicia of bad faith was envisioned, for otherwise the exception would swallow the rule. The immediate question, though, is whether there is a *per se* requirement of more than one underlying claim in the context of a sham litigation claim relating to prior judicial action, and I conclude that there is not.

Some courts have suggested that to permit institution of a sham litigation claim on the basis of a single action would be an undue deterrent to legitimate petition of the courts. *See Mountain Grove Cemetery Ass'n v. Norwalk Vault Company of Bridgeport, Inc.*, 428 F.Supp. 951, 955–56 (D.Conn.1977). In contrast, it has been cogently argued that the number of baseless

---

4. If there is an ultimate need to impose a stiffer requirement at some stage of the proceedings to protect against frivolous, sham litigation claims that might chill the prospective defendant's exercise of the first amendment right of petition, such a requirement is more properly considered at the proof stage. Without ruling on the issue, I note that application of a height-

ened burden of proof has been suggested as a means to account for the constitutional concerns. Note, *Limiting the Antitrust Immunity for Concerted Attempts to Influence Courts and Adjudicatory Agencies: Analogies to Malicious Prosecution and Abuse of Process*, 86 Harv.L.Rev. 715, 725 (1973); *see also Outboard Marine Corp. v. Pezetel*, 474 F.Supp. at 173.

claims is merely probative of the merit of the sham litigation and that "the [C]ourt [in *Trucking Unlimited* did not] intend[ ] to give every dog one free bite, thus making it an irrebuttable presumption that the first lawsuit was not a sham regardless of overwhelming evidence indicating otherwise." *Colorado Petroleum Marketers Ass'n v. Southland Corp.*, 476 F.Supp. 373, 378 (D.Colo.1979).

Support for the latter analysis can be gleaned from *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) (plurality). In *Vendo* the Court reviewed a district court decision enjoining collection of a state court judgment on the ground that the state court action had been violative of antitrust laws. The plurality opinion reversed the district court and the court of appeals, finding that the injunction was violative of the Anti-Injunction Act, 28 U.S.C. § 2283, there being no exception under the Clayton Act to authorize the injunction. Chief Justice Burger and Justice Blackmun concurred, contending that no injunction should have issued absent a pattern of baseless, repetitive claims, "or some equivalent showing of grave abuse of the state courts . . . ." 433 U.S. at 644, n.*, 97 S.Ct. at 2894. (Blackmun, J., concurring). The dissenters, Justices Stevens, Brennan, White, and Marshall, specifically concluded that there is no requirement of more than one claim under *Trucking Unlimited*. After reviewing the *Trucking Unlimited* decision and language there supporting the view that a variety of practices in the adjudicatory process may result in antitrust violations, the dissenters, speaking through Justice Stevens, said: "Manifestly, when Mr. Douglas wrote for the Court in [*Trucking Unlimited*] and described 'a pattern of baseless, repetitive claims,' *id.*, 404 U.S. at 513, 92 S.Ct. at 613, as an illustration of an antitrust violation, he did not thereby circumscribe the category to that one example." *Vendo*, 433 U.S. at 662, 97 S.Ct. at 2903 (Stevens, J., dissenting).

Thus, in *Vendo* it is clear that four members of the Court reject out of hand the suggestion that *Trucking Unlimited* imposed a *per se* rule requiring repetitive actions to sustain a sham litigation allegation. The concurring justices, while finding the absence of a pattern of baseless claims significant in the *Vendo* case, acknowledged the possibility that a showing of grave abuse of the state courts could support a *Trucking Unlimited* kind of claim absent repetitive state court claims.[5] *Vendo*, therefore, foreshadows the demise of any *per se* requirement of multiple judicial claims arguably based on the *Trucking Unlimited* decision and urged by defendant in the instant case.

This reading of the *Vendo* decision accords with the understanding of other courts which have had occasion to consider the single claim issue since the *Vendo* decision. *Colorado Petroleum Marketers Ass'n v. Southland Corp.*, 476 F.Supp. at 378; *Technicon Medical Information Systems, Inc. v. Green Bay Packaging Inc.*, 480 F.Supp. 124, 127–28 (E.D.Wis.1979); *Outboard Marine v. Pezetel*, 474 F.Supp. 168, 175 n.9 (D.Del.1979); *Cyborg Systems, Inc. v. Management Science America, Inc.*, 1978–1 Trade Cases (CCH), ¶ 61,927. *But see S. M. Arnold, Inc. v. Union Carbide Corp.*, 487 F.Supp. 1182, 1184 (E.D.Mo.1980) (deciding, without reference to concurrence or dissent of *Vendo*, that repetitive litigation is required under plurality decision in *Vendo*). Some courts have suggested that a single action is not sufficient, but those decisions have been made without reference to *Vendo* and, for the most part, in circumstances where the observation regarding repetitive litigation is not essential to the outcome of the decision. *See e. g., MCI Communications Corp. v. American Telephone and Telegraph Co.*, 462 F.Supp. 1072, 1103 (N.D.Ill.1978); *Huron Valley Hospital v. Pontiac*, 466 F.Supp. 1301, 1314 (E.D.

---

5. It has been suggested that even the plurality opinion lends support to the view that more than one action is not absolutely required. *Cyborg Systems, Inc. v. Management Science*

*America, Inc.*, 1978–1 Trade Cases (CCH), ʿ 61,927 (E.D.Ill.1978); *Colorado Petroleum Marketers Ass'n v. Southland Corp.*, 476 F.Supp. 373, 378 (D.Colo.1979).

Mich.1979). The Sixth Circuit has upheld a summary judgment on a sham litigation claim based on a single allegation, but in so holding, the court gave no indication that even a partial basis for the ruling was the failure to allege more· than one state court action. *Taylor Drug Stores v. Associated Dry Goods*, 560 F.2d 211 (6th Cir. 1977).

On balance, then, the better view is that there is no *per se* requirement of successive ill-founded suits to support a sham litigation claim. Defendant's effort to explain *Vendo* differently is unavailing. Defendant urges that such a conclusion fails to account for the legitimate concern expressed in *Mountain Grove Cemetery Ass'n*, 428 F.Supp. 951, that a business should be able to seek judicial vindication of its rights without facing the prospect of a retaliatory antitrust, treble damage action. Two observations answer defendant's concern. First, defendant overlooks an essential part of the *Mountain Grove* formulation: the court there was concerned that a single lawsuit should not sustain an antitrust action "without any allegation that the suit involves misconduct similar to the abuses described in *California Motor Transport [v. Trucking Unlimited]*." Thus, *Mountain Grove* does not simply suggest that a single lawsuit, even one fraught with misconduct, should never support a sham litigation claim. Second, to the extent that a balance must be struck between the concern that one might face antitrust claims if one commences even a single action and the view that there should be no *per se* immunity for the first action in what might or might not be a series of sham actions, I reject a *per se* rule.[6]

The final question is whether the plaintiffs must allege an interference with access to the adjudicatory body and, if so, whether there are allegations sufficient to satisfy the requirement. In *Trucking Unlimited*, the petitioner alleged that it had been denied access to the adjudicatory forum by the concerted activities of the defendant. Viewing the pleadings in the light most favorable to the petitioner, the Supreme Court found a valid claim that the respondent had, in effect, displaced the proper agency as the decision maker with respect to certification of common carriers. Based on these facts, the Supreme Court concluded that such an allegation of denial of access to the adjudicatory forums was sufficient, in combination with allegations that it was repetitive, to state a claim in avoidance of *Noerr-Pennington* immunity.

The effect of the denial of access to the adjudicatory bodies in *Trucking Unlimited* was to deny the petitioner means by which to enter the competitive marketplace, since licensing was a prerequisite to lawful competition. Similarly, other cases applying the access denial analysis have involved allegations that a licensing process was being frustrated by the antitrust defendant. *E. g., Franchise Realty*, 542 F.2d at 1081 (access to building permits for MacDonald's restaurants); *Wilmorite Inc. v. Eagen Real Estate Inc.*, 454 F.Supp. 1124, 1133–34 (N.D. N.Y.1977), *aff'd without opinion*, 578 F.2d 1372 (2d Cir.), *cert. denied*, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 655 (1978) (access to town boards in connection with efforts to perfect zoning amendments for shopping malls); *Huron Valley Hospital v. Pontiac*, 466 F.Supp. 1301, 1314 (E.D.Mich.1979) (access to agency with power to certify construction of hospitals and hospital additions). In such cases, denial of access to the adjudicatory tribunal would amount to barring of the plaintiff from the competitive marketplace, thereby achieving monopolistic goals.

It has been correctly noted that the concept of access denial is not conceptually applicable in the judicial context since "the due process clause guarantees access and

---

**6.** In the business world, I cannot think that the threat of antitrust litigation would be a realistic deterrent, except in a circumstance where the action being contemplated is of marginal merit and there is a tension already existing between the prospective parties to the litigation. In that case, the party should not rest assured that a baseless claim aimed at restraint of trade can be pressed with underhanded tactics simply because the party will avoid establishing a pattern or series of such baseless claims.

full participation for all parties." *Outboard Marine Corp. v. Pezetel,* 474 F.Supp. 168, 176 (D.Del.1968). In an apparent effort to meet a perceived requirement of access denial in a case where no actual denial has occurred, some courts have relied on allegations that the antitrust defendant misled the tribunal, thereby obfuscating the issues and, in effect, denying access. *See Woods Exploration and Producing Co. v. Aluminum Company of America,* 438 F.2d 1286 (5th Cir. 1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972) (predating *Trucking Unlimited*); *Outboard Marine,* 474 F.Supp. at 177.

From an overview of the cases, I am not persuaded that there exists an absolute rule that allegations of access denial, direct or *de facto,* are essential in every situation to support a sham litigation claim arising from action in a judicial forum. As already intimated, the use of this approach in *Trucking Unlimited* was a response to the facts presented in that situation. In the judicial setting, access will not generally be denied, unless in a *de facto* way by presentation of perjury or other misconduct before the court. To impose a rigid access denial standard in connection with alleged sham litigation in the judicial forum would seriously limit the recourse of an antitrust plaintiff who has been the victim of a patently malicious prosecution, the sole purpose of which was to restrain trade without a moment's thought about the merits of the litigation. The result of the malicious prosecution could effectively be denial of access to the marketplace, but a rule demanding denial of access to the adjudicatory forum, based on a technical reading of *Trucking Unlimited,* would absolutely bar an antitrust claim.

The cases are not uniform in setting out what must be shown to avoid the immunity of *Noerr-Pennington.* However, I note initially that in the judicial setting, the latitude afforded the antitrust defendant is a more limited one than in the political arena where a "no holds barred", *Noerr,* 365 U.S. at 144, 81 S.Ct. at 533, approach has been sanctioned. *See Trucking Unlimited,* 404 U.S. at 513. Furthermore, in the context of reviewing a sham litigation dismissal and

remanding for trial because the complaint alleged the conduct of repetitive lawsuits bearing the hallmark of sham litigation, the Supreme Court never raised or considered whether access denial had been alleged. *Otter Tail Power Co. v. United States,* 410 U.S. 366, 379–80, 93 S.Ct. 1022, 1030, 35 L.Ed.2d 359 (1973). If access denial is indeed such an indispensible element of a sham litigation claim, it is difficult to explain this apparent oversight.

I believe, then, that the access denial discussion in *Trucking Unlimited* represents a twofold concern. First, there is the concern for the integrity of the adjudicatory tribunal—the concern that its power not be effectively usurped by a monopolistic entity strong enough to impose its will on the agency. Second, there is the reality that denial of access to an agency or board is often synonymous with denial of access to the relevant market, something against which the whole body of antitrust law guards.

Therefore, it should be sufficient for a plaintiff to allege facts to support at least a malicious prosecution with the intent to exclude the plaintiff from the marketplace and with success in achieving this end. In the absence of termination of the underlying prosecution in favor of the antitrust plaintiff, I would be skeptical of the possibility of maintaining the antitrust cause of action without some firm allegation of perjury or other misconduct that misled the tribunal to decide against the antitrust plaintiff, thereby, in effect, denying access to that tribunal. *See, e. g., Outboard Marine,* 474 F.Supp. at 175 (where the underlying action was not baseless and there was not more than an abuse of process claim).

The requirement of an allegation at least sufficient to support a malicious prosecution claim takes into account the original *Noerr-Pennington* concern that only abusive conduct having a direct effect on the antitrust plaintiff's trade can be the basis for a claim that avoids the *Noerr-Pennington* immunity. *See* Note, *Limiting the Antitrust Immunity for Concerted Attempts to Influ-*

**948**

*ence Courts and Adjudicatory Agencies: Analogies to Malicious Prosecution and Abuse of Process*, 86 Harv.L.Rev. 715, 726–31 (1973). Although *Trucking Unlimited* did not establish clear circumstances in which the *Noerr-Pennington* exception could be applied, the Court did note the allegation that litigation was begun without regard to probable cause or the merits of the cases. 404 U.S. at 512, 92 S.Ct. at 612. Similarly, in the context of malicious prosecution, a fundamental element is the absence of probable cause for the action. W. Prosser, Law of Torts, at 835 (4th ed. 1971). It is also noted that a malicious prosecution is inherently contrary to interests of integrity in the judicial system because it preempts judicial time for meritless litigation and is a plain subjugation of legal process to personal motives. When a malicious prosecution is brought with direct anti-competitive intent, the immunity of *Noerr-Pennington* can be no shield for the malicious prosecutor.[7]

Even were I to take a more rigid approach to the access denial requirement, the fact is that in this case the allegations include not only the claim that the Macomb County action was baseless but further that the antitrust defendant conspired to place perjury before the state court. Defendant says that the trial court did not rely on the testimony, but the fact remains that transcript material submitted by plaintiff Verne Corporation shows that the litigation was prolonged when the trial court granted Cadillac Gage's motion to amend and add parties, at least in part on the basis of the alleged perjured testimony. Defendant asserts that the testimony, in affidavit form, was essentially truthful, but that assertion does not overcome the fact issues created by the plaintiffs' claims of improper use of the testimony. Defendant's contention that plaintiffs must show the trial court relied

on the affidavit would have the effect of requiring the plaintiff to show it received an adverse decision from the trial court due to the perjurious testimony. I cannot agree that the antitrust defendant must succeed in the misconduct before the state court in order to sustain potential antitrust liability.

I conclude, then, that there is no rigid requirement of pleading access denial when the sham litigation claim rests on a judicial action in which the antitrust plaintiff prevailed.

■ It has already been decided that the pleading standard to be utilized in this analysis must be the usual notice pleading standard under Rule 8(a). Under this approach, the court properly considers supporting allegations made by the nonmoving party through reference to discovery, so long as the allegation in the complaint is sufficient to state a cause of action and to put the defendant on notice of that against which it must defend.

■ In *Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), the Supreme Court said:

We have held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, [78 S.Ct. 99, 101, 2 L.Ed.2d 80] (1957) (footnote omitted). And in antitrust cases, where "the proof is largely in the hands of the alleged conspirators," *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473, [82 S.Ct. 486, 491, 7 L.Ed.2d 458] (1962), dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.

7. As an aside, it should be noted that the article just cited suggests that the standards for abuse of process may similarly provide guidance in this arena. 62 Harv.L.Rev. at 723–35. I specifically decline to rely on such an approach, for there is serious question whether the ulterior motive necessarily underlying an abuse of process cause of action is independently sufficient

to evade the *Noerr-Pennington* doctrine. *Cf. Outboard Marine Corp.*, 474 F.Supp. at 175 (indicating that *Noerr-Pennington* exception cannot be reached simply by alleging abuse of process). As already has been observed, it is clear that an ulterior anti-competitive motive alone is not sufficient to bring a sham litigation claim into the *Noerr-Pennington* exception.

425 U.S. at 746, 96 S.Ct. at 1853. Under this "concededly rigorous standard," plaintiffs' allegations as pleaded and as buttressed by careful citation to discovery thus far obtained can withstand defendant's motion to dismiss or for partial summary judgment. Plaintiffs' pleadings, viewed liberally and with reference to the discovery to which they have directed the court, allege a baseless state court action, fraught with misconduct by the antitrust defendant, and aimed solely at directly impinging on plaintiffs' ability to compete. This is sufficient to allege an abuse falling within the *Noerr-Pennington* exception.

Accordingly, defendant's motion to dismiss or for partial summary judgment is DENIED.

IT IS SO ORDERED.