**COLORADO PETROLEUM MARKETERS ASSOCIATION, a trade association, John E. Jacobson, Inc., a Colorado Corporation, and John E. Jacobson, Plaintiffs,**

v.

**The SOUTHLAND CORPORATION, a Texas Corporation, Defendant.**

**Civ. A. No. 78–K–1108.**

United States District Court, D. Colorado.

Sept. 17, 1979.

Francis A. Benedetti, Wray, Colo., Jay D. Gurmankin, Berman & Giauque, Salt Lake City, Utah, for plaintiffs.

Peter T. Grossi, Arnold & Porter, Washington, D. C., Roger Goldburg, Shank, Irwin & Holmes, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This complaint and civil action were removed from the Thirteenth Judicial District Court in and for the State of Colorado on October 23, 1978. The action is brought pursuant to '73 Colo.Rev.Stat. 6–2–101, *et seq.*, commonly known as the Unfair Practices Act, and '73 C.R.S. 13–1–124 (1973).

Jurisdiction is based on diversity of citizenship of the parties as provided in 28 U.S.C. § 1332.

Plaintiffs allege that defendant, The Southland Corporation, has sold, advertised for sale and offered for sale gasoline at less than cost in violation of the Colorado Unfair Practices Act. Plaintiffs pray for the following relief: (1) that Southland be held in violation of the statute; (2) that Southland be enjoined from further violations of the statute; and (3) that plaintiffs John E. Jacobson and John E. Jacobson, Inc., receive treble damages.

Southland has counterclaimed alleging that plaintiffs' suit violates the Sherman Act and '73 C.R.S. 6–4–101, *et seq.* Southland has alleged that the plaintiffs "have engaged in, and are engaging in, a combination and conspiracy in unreasonable restraint of the aforesaid trade and commerce in the retail sales of gasoline . . .." Specifically, it is alleged that plaintiffs combined and conspired to do, including, among other things, the following:

(a) Agreed to raise, fix, maintain and stabilize the price at which gasoline is sold at retail in the State of Colorado;

(b) Exchanged information concerning the price at which gasoline is sold at retail in the State of Colorado;

(c) Exchanged information concerning the cost of gasoline which is sold at retail in the State of Colorado;

(d) Caused Richard D. Gilstrap and Harlan L. Ochs, two directors of the plaintiff association, individually or through their attorneys, to write to officials of Southland threatening legal action unless Southland increased the price at which it sold gasoline at retail in the State of Colorado.

(e) Instituted and financed frivolous, harassing, and sham litigation against Southland, not to secure appropriate judicial relief, but rather to force Southland to increase the price at which it sold gasoline at retail beyond the level required under state law; and

(f) Publicized the litigation brought by the plaintiffs against Southland in an ef-

fort to intimidate and deter other persons who sell gasoline at retail in the State of Colorado from lowering their prices.

On April 5, 1979, plaintiffs filed a motion for summary judgment dismissing Southland's counterclaim on two grounds:

(a) that Southland has failed to allege that it has suffered injury recoverable under either the anti-trust laws or § 6–4–101, et seq., Colo.Rev.Stat. and

(b) that the *Noerr-Pennington* Doctrine immunizes plaintiffs from antitrust liability because plaintiffs have exercised their constitutional rights and genuinely sought judicial relief, and have not engaged in baseless and repetitive litigation barring access by Southland to a governmental body.

Plaintiffs followed with a motion to compel answers to interrogatories and requests for production of documents pursuant to Rule 37, F.R.Civ.P., on May 9, 1979. These motions have been fully briefed and argued by the parties.

 Plaintiffs argue that the counterclaim must be dismissed because Southland has failed to allege an injury which is compensible in a private antitrust action. Southland has alleged that it "has been injured and damaged in its business and property." Southland also alleges that it has been forced to expend substantial amounts in legal fees and other costs necessary to respond to unwarranted threats from the plaintiffs and to defend itself from the sham litigation instituted by the plaintiffs pursuant to their conspiracy to increase and stabilize gasoline prices. (*Defendant's Brief in Opposition to the Motion for Summary Judgment at 19.*) Southland urges that the good will of the public is of utmost importance in its business. Southland asserts that the alleged misrepresentations advanced by plaintiffs to convince other gasoline wholesalers, retailers, and the public at large that Southland was violating the state unfair practices act "undoubtedly had an adverse effect on Southland's sales." *Id.* at 22.

Section 4 of the Clayton Act, 15 U.S.C. § 15, provides:

Any person who shall be *injured in his business or property by reason of anything forbidden in the antitrust laws* may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

Plaintiffs misplace reliance on *Bowen v. New York News, Inc.*, 522 F.2d 1242 (2nd Cir. 1975). In that case, the Second Circuit concluded

that for an antitrust plaintiff to have standing "[there] must be a casual connection between an antitrust violation and an injury sufficient for the trier of fact to establish that the violation was a 'material cause' of or a 'substantial factor' in the occurrence of the damage." (citations omitted.)

*Id.* at 1255. Paragraph 10 of Southland's counterclaim in the case at bar provides, in pertinent part:

In formulating and effectuating the aforesaid combination and conspiracy, the counterclaim-defendant association and its members . . . have done those things which they combined and conspired to do, including, among other things, the following:

. . . . .

(e) Instituted and financed frivolous, harassing, and sham litigation against Southland, not to secure appropriate judicial relief, but rather to force Southland to increase the price at which it sold gasoline at retail beyond the level required under state law; . . . .

Southland has alleged that this litigation was instituted in an attempt to effectuate an illegal result proscribed by the antitrust laws. It is thus properly considered "a 'substantial factor' in the occurrence of damage," if any, suffered by Southland. Any damages, which would necessarily include attorney's fees, sustained by Southland in the defense of this lawsuit, if found to be

brought in violation of the antitrust laws, is recoverable by virtue of Section 4 of the Clayton Act, 15 U.S.C. § 15. However, it is important to note that the treble damage clause of Section 4 would *only apply to fees generated in the defense of plaintiffs' lawsuit;* and that is only in the event it is found to be a vexatious lawsuit brought in violation of the antitrust laws. Any attorney's fees expended in the successful prosecution of Southland's antitrust action would be limited to single recovery under the act.

Pursuant to the notice pleading requirements of the Federal Rules of Civil Procedure, Southland pled sufficient damages to withstand a motion to dismiss at this stage of the lawsuit.

 In their second ground for dismissal of Southland's counterclaim, plaintiffs' argue that the *Noerr-Pennington* Doctrine immunizes them from antitrust liability in their prosecution of this civil action because they are exercising their constitutional right to petition the government. Plaintiffs contend that recovery under the Sherman Act in the case at bar is possible "only if such petitioning is merely a part of repetitive 'sham' litigation and is intended to accomplish no more than to directly interfere with the business relationships of a competitor." (*Plaintiffs' Brief in Support of Summary Judgment* at 2–3.) Plaintiffs contend that they "earnestly believe, and intend to prove, that defendant has, in violation of state law, sold gasoline at retail at below cost prices." (*Plaintiffs' Brief* at 10.) It is their position that recourse to the judicial system is entirely proper in this case in that they are attempting to enforce state laws; and that such recourse is an action protected by the First Amendment.

In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the United States Supreme Court rejected the application of the Sherman Act in an Attack on the concerted efforts by a group of railroads to persuade state government officials to take action detrimental to competing truckers. The Court reasoned:

To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that act. Secondly, and of at least equal significance, such a construction of the Sherman Act would raise important constitutional questions. The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms. *Id.* at 137–138, 81 S.Ct. at 529–530.

In balancing the importance of the First Amendment freedom to petition the government against the substantive evils which congress sought to control through legislation of the antitrust laws, the court carved out an exception to the proscriptions set forth in those laws. However, the court recognized that there may be situations where concerted efforts, which are "ostensibly directed toward influencing government action, [are] a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." *Id.* at 144, 81 S.Ct. at 533.

Four years after *Noerr,* in *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the court exempted from the dictates of the Sherman Act concerted action to influence public officials when such conduct was part of a broader scheme which itself violated the act. The court determined:

Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act. *Id.* at 670, 85 S.Ct. at 1593.

This protection from antitrust liability was extended to the administrative and judicial processes in *California Motor Transport Co. v. Trucking, Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). In applying the "sham" exception recognized in *Noerr*, the Court held:

> Opponents before agencies or courts often think poorly of the other's tactics, motions, or defenses and may readily call them baseless. *One claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused.* That may be a difficult line to discern and draw. But once it is drawn, the case is established that abuse of those processes produced an illegal result, viz., effectively barring respondents from access to the agencies and courts. Insofar as the administrative or judicial processes are involved, actions of that kind cannot acquire immunity by seeking refuge under the umbrella of "political expression." *Id.* at 513, 92 S.Ct. at 613. (Emphasis added.)

Plaintiffs urge that this language requires a threshold finding of baseless, repetitive claims before the "sham litigation" exception may be invoked. Recently, in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), the Supreme Court addressed the issue of whether an injunction of state court proceedings was prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283. Although the court did not reach the issue of single suit "sham litigation," footnote 6 of the plurality opinion is enlightening: [1]

> Any 'disadvantage' to which the federal plaintiff is put in the initial proceeding is diminished by his ability to set up the federal antitrust claim as an affirmative defense, reviewable by this Court under 28 U.S.C. § 1257(3), and his ability to sue for treble damages resulting from vexatious prosecution of that state-court litigation. *Id.* at 636 n.6, 97 S.Ct. at 2889 n.6.

*See also Cyborg Systems, Inc. v. Management Science America, Inc.*, 1978–1 Trade Cases ¶ 61,927 (N.D.Ill.1978) which observes that "these [Supreme Court] opinions suggest that a majority of the Court would find that the sham litigation exception can be applied to a case involving only one lawsuit." *Id.* at 73,918.

In the case at bar I am not persuaded that a pattern of baseless, repetitious litigation is necessary in order to take a case outside the ambit of the *Noerr-Pennington* Doctrine. Plaintiffs misinterpret the import of the court's statement in *California Motor Transport, supra,* where the Court notes that "[o]ne claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused." 404 U.S. at 513, 92 S.Ct. at 613. The court, in making that statement, was simply addressing the probative value of one "baseless" claim as compared to the probative value of a pattern of "baseless, repetitive claims" in making the determination whether the substantive evils proscribed by the antitrust laws outweigh the purported exercise of the First Amendment right to petition the government. Logic is abused by the purported conclusion that in the absence of a series of such "baseless" lawsuits, the purpose and intent supporting the institution of a civil action can never be the basis for invoking the "sham litigation" exception to the *Noerr-Pennington* Doctrine. I am not convinced that the court intended to give every dog one free bite, thus making it an irrebuttable presumption that the first lawsuit was not a sham regardless of overwhelming evidence indicating otherwise. Advancing such a holding denigrates the animus of the antitrust laws and encourages the employment of governmental machinery to effectuate the illegal result

---

1. Although the state-court litigation in *Vendo* ran a protracted course, i. e., two trials, two appeals to the Illinois Appellate Court, and an appeal to the Supreme Court of Illinois, it is important to note that all of these proceedings constitute a single state court action.

which the antitrust laws condemn. Although the frequency of litigation is a probative factor in a putatively sham litigation situation,[2] it is not by any means determinative.

It must be emphasized that such a holding does not compromise the importance of the First Amendment right to petition the government. On the contrary, "genuine efforts to induce [the] government to take such lawful action are beyond the Sherman Act." *Metro Cable Co. v. CATV of Rockford, Inc.*, 516 F.2d 220, 224 (7th Cir. 1975). This is true regardless of any anti-competitive purpose or effect. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., supra.* However, the question whether such an action is nothing more than an attempt to interfere directly with the business relationships of a competitor can be answered only after careful evaluation and consideration of all of the facts and circumstances giving rise to the primary lawsuit brought by the plaintiffs. In referring to the *Noerr* and *Pennington* decisions, the Tenth Circuit, in *L. G. Semke v. Enid Automobile Dealers Association,* 456 F.2d 1361 (10th Cir. 1972), summarized the state of the law:

> [I]t was held that so long as the efforts made to influence public officials are bona fide and are carried out by proper means, the conduct is in effect exempt from the antitrust laws even though the persons petitioning the governmental agencies or utilizing the courts are seeking to realize anti-competitive objectives and are thus fully aware that their competitors are likely to suffer direct damage as the result of this use of government machinery. . . . The sole exception recognized was a sham use of the state process.
>
> . . . . .

Thus, the term "sham" in this context would appear to mean misuse or corruption of the legal process. Therefore, the utilization of the court or administrative agency in a manner which is in accordance with the spirit of the law continues to be exempt from the antitrust laws. *Id.* at 1366.

Thus, this recent decision in Trucking Unlimited furnishes insight as to what is meant by the term "sham", but in so doing it does not aid the plaintiff at bar because it has not been shown here that defendants were guilty of fraud, corruption or misuse of the state processes. *Id.* at 1366–67.

*See also Adolph Coors Co. v. A & S Wholesalers, Inc.,* 561 F.2d 807 (10th Cir. 1977).

The Tenth Circuit has thus recognized that such a determination is necessarily a question of fact. In light of the numerous allegations asserted in Southland's brief in opposition to the motion for summary judgment, it would be improper to give summary treatment to its antitrust claims. The Supreme Court, in *Hospital Building Company v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), reiterated its distaste for summary dismissals of antitrust actions:

> We have held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, [78 S.Ct. 99, 2 L.Ed.2d 80] (1957). And in antitrust cases, where "the proof is largely in the hands of the alleged conspirators," *Poller v. Columbia Broadcasting,* 368 U.S. 464, [82 S.Ct. 486, 7 L.Ed.2d 458] (1962), dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly. Applying this *concededly rigorous standard,* we conclude that the instant case is not one in which dismissal should have been granted. *Id.* at 746, 96 S.Ct. at 1853. (Emphasis added.)

I conclude that a single lawsuit can provide the basis for invoking the "sham litigation" exception to the *Noerr-Pennington*

**2.** *See United States v. Otter Tail Power Company,* 360 F.Supp. 451 (D.Minn.1973), *aff'd,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359.

Doctrine. *See George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 555 (2nd Cir. 1977).

Plaintiffs urge that Southland's "sham litigation" allegations are insufficient as a matter of law because there is no evidence that access to a governmental body has been barred. Such is not, however, the gravamen of the complaint.

The antitrust laws represent the legislative expression of this country's recurrent inclination toward a system of quasi-free competition. *See United States v. Socony-Vacuum Oil Company,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1939). In balancing the First Amendment right to petition the government against the proscriptions set forth in the Sherman Act, the court, in *California Motor Transport, supra,* emphasized that "First Amendment rights may not be used as the means or the pretext for achieving 'substantive evils' . . . which the legislature has the power to control." 404 U.S. at 515, 92 S.Ct. at 614. In *Northern Pacific Railway Company v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), the Supreme Court recognized the Sherman Act as

> a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conducive to the preservation of our democratic political and social institutions. But even were that premise open to question, the policy unequivocally laid down by the Act is competition. 356 U.S. at 4, 78 S.Ct. at 517.

The cases upon which the plaintiffs rely in support of the access-barring argument are *California Motor Transport, supra,* and *Franchise Realty Interstate Corporation v. San Francisco Local Joint Executive Board of Culinary Workers,* 542 F.2d 1076 (9th Cir. 1976). In those cases, the illegal result condemned was the barring of the parties from access to the agencies and courts in an alleged effort to frustrate free competition in violation of the antitrust laws. In *California Motor Transport, supra,* the Court suggested that a line must be drawn in determining whether the administrative or judicial processes have been abused. "But once it is drawn, the case is established that abuse of those processes produced an illegal result, viz., effectively barring respondents from access to the agencies and courts." 404 U.S. at 513, 92 S.Ct. at 613.

It is important to recognize that Southland's counterclaim is brought to vindicate alleged violations of Sections 1 and 2 of the Sherman Act and Section 4 of the Clayton Act. Southland "seeks treble damages for injury to its business and property resulting from the counterclaim-defendants' conspiratorial *actions* designed to increase, fix, stabilize, and maintain the price of gasoline sold at retail in the State of Colorado." *Counterclaim* at 3. (Emphasis added.) Plaintiffs' lawsuit is a constituent element of this alleged violation of the antitrust laws. It is but one of several alleged overt acts by which plaintiffs have attempted to achieve the "unreasonable restraint of trade and commerce in the retail sales of gasoline" alleged in the counterclaim. The question now becomes: Can the *Noerr-Pennington* Doctrine be used to deny someone else the right to petition the government for the redress of grievances? I hold that it cannot.

Southland has stated a claim upon which relief can be granted under the Sherman Act. Accordingly, it is

ORDERED that plaintiffs' motion for summary judgment dismissing defendant's counterclaim is denied.

Since it appears that the motions concerning discovery should be reconsidered in light of the foregoing, I deny them without prejudice and direct that counsel discuss the possibility of proceeding with discovery without further direction from the court. If such agreements cannot be achieved, I will, of course, consider any subsequently filed motions.