SUNERGY COMMUNITIES, INC., a Delaware corporation, and Charles F. DeGroot, Plaintiffs,

v.

ARISTEK PROPERTIES, LTD., a Colorado limited partnership, Aristek Corporation, a Delaware corporation, Aristek Communities, Inc., a Colorado corporation, Neal Smith, Craig M. Bollman, Jr., and John Does 1 Through 50, Defendants.

Civ. A. No. 80–K–410.

United States District Court, D. Colorado.

April 8, 1982.

H. Clay Whitlow, Craig R. Maginness, Sherman & Howard, Denver, Colo., for plaintiffs.

Bruce D. Pringle, Baker & Hostetler, Denver, Colo., for Aristek.

John S. Finn, Nelson & Harding, Denver, Colo., for Neal.

Robert J. Kapelke, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for Bollman.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action pursuant to § 1 of the Sherman Act, 15 U.S.C. § 1, and § 4 of the Clayton Act, 15 U.S.C. § 15, alleging that the defendants engaged in a conspiracy to restrain trade in the acquisition, development, management, marketing, syndication and selling of mobile and modular home communities. This court has jurisdiction pursuant to 15 U.S.C. § 15 and 28 U.S.C. § 1337.

The plaintiff, DeGroot, is a former consultant of the defendant, Aristek Properties, Ltd., and he is the president and principal shareholder of Sunergy Communities, Inc. The plaintiff, Sunergy Communities, Inc., is a corporation which is trying to compete with the defendants Aristek Properties, Aristek Corporation and Aristek Communities, in the mobile and modular homes market. Aristek Communities is a subsidiary of Aristek Corporation. The defendant, Craig Bollman, is the chief operating officer of Aristek corporation and Aristek Communities. The defendant, Neal Smith, is the public relations manager of

Aristek Corporation and Aristek Communities.

The plaintiffs' specific allegations are that: 1) Aristek Properties has withheld money it owes DeGroot, for the purpose of preventing him from starting a competing corporation; 2) Aristek properties forced DeGroot to hire a lawyer to participate in arbitration concerning his money, in order to deprive DeGroot of the time and money needed to finance and run a competing corporation; 3) Aristek Properties commenced an action in state court to enjoin the arbitration for the same reasons; 4) Aristek filed a state court action against DeGroot alleging breach of fiduciary duties and other related state law claims for the same reasons and also to force Sunergy to delay and modify its public offering to make disclosure of the existence of such a lawsuit to the Securities and Exchange Commission and to prospective investors; 5) Aristek corporation's lawyers reserved the corporate name "Sunergy Communities, Inc.," in order to prevent the plaintiff, Sunergy Communities, Inc., from incorporating under that name; 6) The defendant, Neal Smith, attempted to convince Sunergy Communities, Inc.'s underwriters to refrain from proceeding with Sunergy and instead to underwrite a public offering on behalf of Aristek corporation; 7) The defendant, Craig Bollman, attempted to threaten and intimidate actual and prospective directors and officers of Sunergy not to serve; and 8) One or more of the defendants, telephoned newspapermen with erroneous information about Sunergy in the hopes that the press would publish articles casting Sunergy in a negative light.

As a result of this course of conduct, the plaintiffs' request the following damages: 1) Lost profits to Sunergy caused by the defendants' acts which have delayed Sunergy's active operations; 2) Legal fees and costs incurred to both DeGroot and Sunergy from having to defend against Aristek's "sham" state court actions and arbitration proceedings; and 3) Sunergy's extra expenses incurred modifying its offering circular and other documents filed with the Securities and Exchange Commission due to Aristek's state court damage action.

This case is now before me on the defendants' motion for partial summary judgment pursuant to rule 56(b), F.R.Civ.P. The defendants raise the following arguments in support of their motion: 1) The plaintiffs' claims that Aristek instituted "sham" litigation to restrain trade in violation of § 1 of the Sherman Act, are barred by the *Noerr-Pennington* doctrine; 2) The plaintiff, DeGroot lacks standing to sue for attorney's fees for his personal injuries as an officer and employee of Sunergy since his injuries are too remote to constitute injuries to "business or property" within the meaning of § 4 of the Clayton Act; 3) Sunergy's claim for lost profits should be dismissed because Sunergy is a new business with no history of profits; and 4) Sunergy's claims for attorney's fees in the state court litigation and arbitration proceedings are without merit since Sunergy was not a party to those actions.

For the following reasons, the defendants' motion for partial summary judgment is granted in part and denied in part.

 In ruling on a summary judgment motion, I must construe all pleadings, affidavits, and admissions in favor of the party against whom the motion is made. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980). No margin exists for disposition of factual issues, nor does summary judgment serve as a substitute for trial when there are disputed facts. *Commercial Iron & Metal Co. v. Bache & Co.*, 478 F.2d 39, 41 (10th Cir. 1973). However, "once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his [pleadings], but must respond with specific facts showing the existence of a genuine factual issue to be tried." *Coleman v. Darden*, 595 F.2d 533, 536 (10th Cir.), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979) (citations omitted).

## I. THE *NOERR–PENNINGTON* DOCTRINE

 The *Noerr-Pennington* Doctrine has evolved from a series of Supreme Court decisions holding that efforts to influence legislative, executive or judicial action do

not violate the antitrust laws. In *Colorado Petroleum Marketers Assn. v. Southland Corp.*, 476 F.Supp. 373, 377–78 (D.C.Colo. 1979), I summarized the *Noerr-Pennington* Doctrine's history and purpose. I stated:

In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the United States Supreme Court rejected the application of the Sherman Act in an Attack on the concerted efforts by a group of railroads to persuade state government officials to take action detrimental to competing truckers. The Court reasoned:

To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that act. Secondly, and of at least equal significance, such a construction of the Sherman Act would raise important constitutional questions. The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms. *Id.* at 137–138, 81 S.Ct. at 529–530.

In balancing the importance of the First Amendment freedom to petition the government against the substantive evils which congress sought to control through legislation of the antitrust laws, the court carved out an exception to the proscriptions set forth in those laws. However, the court recognized that there may be situations where concerted efforts, which are "ostensibly directed toward influencing government action, [are] a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." Id. at 144, 81 S.Ct. at 533.

Four years after *Noerr*, in *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the court exempted from the dictates of the Sherman Act concerted action to influence public officials when such conduct was part of a broader scheme which itself violated the act. The court determined:

Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act. *Id.* at 670, 85 S.Ct. 1593.

This protection from antitrust liability was extended to the administrative and judicial processes in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). In applying the "sham" exception recognized in *Noerr*, the Court held:

Opponents before agencies or courts often think poorly of the other's tactics, motions, or defenses and may readily call them baseless. *One claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused.* That may be a difficult line to discern and draw. But once it is drawn, the case is established that abuse of those processes produced an illegal result, *viz.*, effectively barring respondents from access to the agencies and courts. Insofar as the administrative or judicial processes are involved, actions of that kind cannot acquire immunity by seeking refuge under the umbrella of "political expression." *Id.* 404 U.S. at 513, 92 S.Ct. at 613. (Emphasis added.)

*Id.*

In *Southland Corp.*, I further extended the sham exception to the *Noerr-Pennington* Doctrine, beyond the language of *Trucking Unlimited Co.*, to hold that a single sham lawsuit can form the basis for this exception.

In the instant case, the defendants claim that their state court actions and arbitra-

tion proceedings are not "shams" as a matter of law since they prevailed in the state court action to enjoin enforcement of the arbitration proceedings. DeGroot won at the arbitration level and then instituted an action to confirm the arbitrator's award. Aristek then filed an action to enjoin confirmation of the arbitrator's award. In that action, State District Judge Kingsley found that the arbitration award could not be enforced because DeGroot's contract with Aristek was void and unenforceable. Under the terms of the contested contract, DeGroot was obliged to assist Aristek in acquiring mobile home communities in Florida and other states. Judge Kingsley ruled that the letter agreement and contract between the parties were void because they were illegal since DeGroot did not possess a real estate brokers license as required under Florida law. The effect of Judge Kingsley's order is to cast doubt on the merits of all of Aristek's state law claims in the breach of fiduciary duties action that are premised on the performance of the illegal contract. Therefore, it is unclear whether Aristek truly succeeded in the state court proceedings.

The defendants apparently rely on language in *Ernest W. Hahn v. Codding*, 615 F.2d 830, 841 (9th Cir. 1980), for the proposition that success before a political or adjudicative body precludes application of the sham exception to the *Noerr-Pennington* Doctrine. However, in *Codding*, the Ninth Circuit merely stated that:

> While success before the political or adjudicative body is not the sole criterion for determining whether a course of proceeding was undertaken as a sham to interfere directly with the business relationship of a competitor, it is a factor considered in determining whether a cause of action is stated under the sham exception.

*Id.* at n.13.

■ Since it is unclear whether Aristek truly succeeded in the state court proceed-ings and since success is, in any event, only one factor to consider in determining whether an action is a "sham," summary judgment on these claims at this time is inappropriate.[1]

## II. STANDING UNDER § 4 OF THE CLAYTON ACT

■ Aristek claims that DeGroot lacks standing under § 4 of the Clayton Act, 15 U.S.C. § 15, to recover his attorney's fees spent defending the allegedly "sham" litigation, since he has not been "injured in his business or property" within the meaning of the act. The defendants rely on *Reibert v. Atlantic Richfield Co.*, 471 F.2d 727 (10th Cir. 1973) for the proposition that a mere employee lacks standing to assert the rights of his corporation-employer since antitrust violation injuries to the corporation are not "business or property" injuries to the employee.

However, in the instant case, DeGroot claims that Aristek's allegedly sham litigation and other conduct were directed against him personally and were designed to restrain him from competing in the mobile and modular home market, whether through Sunergy or otherwise. DeGroot further claims that he personally suffered injury from having to pay legal expenses, as a result of Aristek's conduct. Accordingly, the defendants' motion for partial summary judgment due to lack of standing is denied. *See id.* at 730–31 and cases cited therein holding that allegations of antitrust violations directed against individuals are sufficient to confer standing to the individuals under § 4 of the Clayton Act.

## III. LOST PROFITS OF AN UNESTABLISHED BUSINESS

Aristek claims that as a matter of law, an unestablished business, such as Sunergy,

---

1. For example, it might be the case that DeGroot has an indisputable right to compensation from Aristek on an unjust enrichment theory so that Aristek's attempt to avoid such compensation by litigating the contract's validity after DeGroot's successful arbitration, is a sham.

**1332**

may not recover anticipated profits in antitrust cases. The defendants, citing contract and tort cases, note that the traditional rule is that a new business may not recover anticipated profits. *See e.g., McBrayer v. Teckla Inc.*, 496 F.2d 122, 126–27 (5th Cir. 1974); *Riverside Coal Co. v. United Mine Workers of America*, 410 F.2d 267, 274 (6th Cir. 1974). 22 Am.Jur.2d Damages § 173 at P. 245 notes that:

> A distinction is drawn between claims for profits derived from a new business venture and those derived from a going concern. The general rule is that evidence of expected profits from a new business is too speculative, uncertain, and remote to be considered and does not meet the legal standard of reasonable certainty. Accordingly, recovery for lost profits is not generally allowed for injury to a new business with no history of profits.

■ However, the question of the availability of lost profits as an item of damages is primarily a problem of proof at trial and the court must determine at that time whether the plaintiff has produced the quantum of evidence sufficient to establish such a claim. *See Cargill Inc. v. Taylor Towing Service Inc.*, 642 F.2d 239, 241 (8th Cir. 1981). Accordingly, dismissal as a matter of law is improper.[2] Moreover, since the Supreme Court has cautioned that "in antitrust cases ... dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly," *Hospital Building Co. v. Trustees of Rex. Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976), I am loathe to dismiss Sunergy's lost profits claim without giving it full opportunity to procure further evidence and develop damage studies, despite the usual speculative nature of such profits by a new business. Further, since neither party has presented any actual evidence on the existence or non-existence of Sunergy's lost profits, I cannot now conclude that the defendants are entitled to

summary judgment on that claim beyond a reasonable doubt, as is required on passing on a motion for summary judgment. *See Norton v. Liddell*, 620 F.2d 1375, 1381 (10th Cir. 1980). Accordingly, the defendants' motion for partial summary judgment on the lost profits claim is denied.

## IV. SUNERGY'S ATTORNEY'S FEES

■ Finally, the defendants move for partial summary judgment on Sunergy's claim for attorney's fees arising from the allegedly "sham" state court litigation, on the ground that DeGroot, rather than Sunergy, paid those expenses. On February 5, 1981, the defendants submitted requests for admissions to Sunergy pursuant to Rule 36, F.R.Civ.P. Sunergy has never responded to those requests so they are deemed admitted. *Home Indemnity Co. v. Famularo, Inc.*, 530 F.Supp. 797, 799 (D.C.Colo.1982). Further, a summary judgment may be based on a matter deemed admitted. *Id.*

By its failure to respond to the requests for admissions, Sunergy admitted that it was not a party to the state court proceedings and litigation; that it incurred no legal expenses in connection with the state court proceedings and litigation; and that all such legal expenses were incurred by DeGroot personally. Accordingly, the defendants' motion for partial summary judgment on Sunergy's attorney's fees claim is granted.

IT IS HEREBY ORDERED that in accordance with and for the reasons expressed herein, the defendants' motion for partial summary judgment is granted in part and denied in part.

---

**2.** Further, Comment 2 to § 2–708 of the Uniform Commercial Code, expressly modifies the traditional contract rule with respect to sales contracts by stating that "it is not necessary to

a recovery of 'profit' to show a history or earnings, especially if a new venture is involved."