**NATIONAL CASH REGISTER CORPORATION, a Maryland corporation, Plaintiff,**

v.

**David ARNETT, individually; Creative Financial Services, Inc., a Colorado corporation; and David Arnett as president of Creative Financial Systems, Inc., Defendants.**

Civ. A. No. 81–C–971.

United States District Court,
D. Colorado.

Jan. 17, 1983.

Jerry B. Tompkins, Traylor, Palo, Cowan & Arnold, Grand Junction, Colo., for plaintiff.

Douglas E. Larson, Harshman, Deister, Larson & McBee, Grand Junction, Colo., for defendants Arnett and Creative Financial Services.

Timothy J. Flanagan, Kelly, Stansfield & O'Donnell, Denver, Colo., Joseph H. Skinner, Grand Junction, Colo., for General Bank.

### ORDER DENYING MOTION TO DISMISS

CARRIGAN, District Judge.

Plaintiff, National Cash Register Corporation, ("NCR"), has moved to dismiss the defendants' first counterclaim. That counterclaim alleges a violation of § 2 of the Sherman Anti-Trust Act, 15 U.S.C. § 2. The issues have been thoroughly briefed and argued.

Plaintiff NCR is a multi-national corporation engaged primarily in the development, marketing and distribution of computer hardware and software. Defendant Arnett was employed by NCR for eight years, principally in the area of research, development and sale of computerized financial systems for use by banks.

In 1980 Arnett left NCR and established the defendant corporation, Creative Financial Systems, Inc. ("Creative"). Creative also is involved in selling software to banks. It competes directly with NCR in this aspect of NCR's business.

During his employment at NCR, Arnett worked on "Banker 79", a confidential computer program licensed to NCR by CT Associates, and on its updated successor system, "Banker 80." The licensing agreement between NCR and CT Associates prohibited NCR from disclosing any aspect of these programs. In its complaint, NCR asserts that Arnett is now marketing programs nearly identical to "Banker 79" and "Banker 80." NCR claims that in so doing, Arnett is breaching his own employment contract, violating his fiduciary duty, wrong-

fully appropriating the programs, and violating NCR's confidentiality agreement with CT Associates.

Defendants' first counterclaim, the target of the instant motion to dismiss, alleges that the only real purposes of this litigation are "to eliminate the defendant as a competitor, to force discontinuation of the defendant's system and illegally to restrain trade and competition in the area of computer software systems utilized by commercial banks." As grounds for its motion to dismiss this counterclaim, NCR urges that the facts asserted cannot constitute a violation of the anti-trust act. It argues that litigation cannot rise to the level of a Sherman Act violation unless multiple spurious actions are instituted.

The law is clear that in deciding a motion to dismiss, I must construe the factual allegations in the light most favorable to the pleading party, and must deny the motion "unless it appears beyond doubt that the [party whose claims may be dismissed] can prove no set of facts in support of his claim which entitles him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973); *Radovich v. National Football League,* 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957).

The general language of the Act itself fails to provide any guidance in deciding whether the conduct alleged in the counterclaim under consideration constitutes monopolization or conspiracy to monopolize. The Act states:

> Every person who shall monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states....."
> (shall be guilty of a violation of the laws of the United States.) 15 U.S.C. § 2.

There is, however, case law to support the defendants' counterclaim. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) developed the "Noerr-Pennington doctrine" that—as a

general rule—efforts to influence judicial, legislative or executive action do not violate the anti-trust laws. In balancing the First Amendment freedom of speech against the evils prohibited by anti-trust statutes, the Court resolved the question in favor of the constitutional guarantees.

An exception to the *Noerr-Pennington* holding exists where "concerted effort, ostensibly directed toward influencing government action [is] a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." 365 U.S. at 144. This has become known as the "sham exception."

The question remains: what claims, if proved, would establish a sham? Plaintiff concedes that bad faith litigation may give rise to a § 2 violation, but argues that "bad faith" cannot be shown, absent the filing of multiple lawsuits. This contention evolves from the *Noerr-Pennington* extension in *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). There, the Supreme Court noted that a pattern of "baseless, repetitious claims" could result in an anti-trust violation.

*Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986 (9th Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1979), cited by the plaintiff in support of its position, does not actually preclude the possibility that a single suit could result in an anti-trust violation. There the Ninth Circuit reversed the district court on an erroneous burden of proof instruction, and held that "bad faith" must be proved by clear and convincing evidence, not a mere preponderance. However, the trial court was upheld in its finding that "such (prior patent) infringement actions may constitute an attempt to monopolize, violative of § 2." 601 F.2d at 993. Nothing in the opinion indicates that anti-trust violations are limited to *multiple* prior suits.

Recently, Judge Kane of this Court held that one case alone may constitute a violation of § 1 of the Sherman Anti-Trust Act.

Colorado Petroleum Marketers Association v. Southland Corp., 476 F.Supp. 373 (D.Colo. 1979). He cited Lektro-Vend Corp. v. Vendo Co., 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), which, while never directly addressing the issue whether a single action can amount to sham litigation, had indicated that vexatious prosecution may be countermanded by instituting an anti-trust action. 433 U.S. at 636, n. 6, 97 S.Ct. at 2890, n. 6. (For an excellent discussion of the single suit issue, see the trial court opinion. Lektro-Vend Corp. v. Vendo Co., 403 F.Supp. 527 (N.D.Ill.1975).)

In Colorado Petroleum, Judge Kane rejected the argument that more than one prior suit is required to establish an anti-trust claim. He interpreted California Motors as merely addressing the probative value of having filed only one suit as contrasted to that of having filed many. The number of sham lawsuits filed speaks to the weight of evidence to support the claimed anti-trust violation, not to its existence. See also, Sunergy Communities v. Aristek Properties, 535 F.Supp. 1327 (D.Colo.1982).

Referring to California Motors, Judge Kane stated:

> "I am not convinced that the Court intended to give every dog one free bite, thus making it an irrebuttable presumption that the first lawsuit was not a sham regardless of the overwhelming evidence indicating otherwise. Advancing such a holding denigrates the animus of the anti-trust laws...."

Colorado Petroleum Marketers Association v. Southland Corp., 476 F.Supp. at 378.

I agree with Judge Kane.

In the instant case, NCR, a long established corporation, has sued a fledgling company seeking to prevent its profiting from the only product it offers. A victory for NCR would put the defendant out of business, thus eliminating a competitor from the marketplace. Defendant claims that the technical proof will show that NCR must have realized that the programs or systems allegedly misappropriated were significantly different from NCR's. If the defendant can prove that assertion, then

the conclusion might be drawn that NCR acted with no intent other than to "monopolize part of the trade or commerce among the several states." 15 U.S.C. § 2.

Accordingly,

IT IS ORDERED that the plaintiff's motion to dismiss the defendant's first counterclaim is denied.